## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 14 2017, 8:45 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office and
Cass County Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re The Termination of The Parent-Child Relationship of: J.C.M. *(Minor Child)*, <br><br> and <br><br> H.M. *(Mother)* <br> *Appellant-Respondent,* <br><br> v. <br><br> The Indiana Department of Child Services, <br> *Appellee-Petitioner.* | December 14, 2017 <br><br> Court of Appeals Case No. 09A02-1703-JT-640 <br><br> Appeal from the Cass Circuit Court <br><br> The Honorable Leo T. Burns, Judge <br><br> Trial Court Cause No. 09C01-1608-JT-9 |

**Robb, Judge.**

# Case Summary and Issue

[1] H.M. ("Mother") appeals the juvenile court's termination of her parental rights to her child, J.M. ("Child"). Mother presents two issues for our review which we consolidate and restate as whether the juvenile court's termination order is clearly erroneous. Concluding the termination order is not clearly erroneous, we affirm.

# Facts and Procedural History

[2] Child was born to Mother and J.J.M. ("Father")[1] (collectively "Parents") on September 22, 2013. At this time, Mother was serving in-home detention as the result of convictions for burglary and dealing in methamphetamine. Five weeks later, on October 29, Mother was transported to the hospital after appearing to be under the influence of a controlled substance. A drug screen administered by the hospital revealed positive results for oxycodone, amphetamine,

---

[1] The juvenile court also terminated Father's parental rights. On March 23, 2017, counsel filed a joint notice of appeal and appearance for Father and Mother. On June 19, 2017, counsel filed a motion to withdraw appearance on behalf of Father, alleging Mother objected to the joint representation and Father had not communicated with counsel. On June 22, 2017, counsel filed a brief on behalf of Mother only. On June 28, 2017, this court granted counsel's motion to withdraw appearance on behalf of Father, remanded to the trial court to assign successor counsel, and ordered Father's brief to be filed within forty-five days. Accordingly, Father's brief was due on August 14, 2017. Although new counsel did file an appearance, Father did not file a brief by August 14, 2017, and on September 8, 2017, this court granted DCS's Motion to Close Briefing and Set Due Date for State's Brief, granting DCS thirty days to file its brief. DCS timely filed its brief. On November 7, 2017, this court issued an order granting Father's second counsel's Motion to Withdraw Appearance and ordering the Cass County Public Defender's Office to assign new appellate counsel, who was required to file an appearance within ten days. Father's third counsel filed an appearance on November 16, 2017, but no request to file a belated brief or other request for Father to participate in this appeal has been filed. Therefore, by separate order, Father's appeal is dismissed pursuant to Appellate Rule 45(D) for failing to file a timely brief. Because Father did not file a brief and does not participate in this appeal, we limit our recitation of facts to those pertinent to Mother.

methamphetamine, and benzodiazepines. After Mother's release, DCS attempted to collect drug screens from Parents but they refused.

[3] On October 30, 2013, DCS filed an emergency petition for custody asking to remove Child from Parents' home; then, on November 1, filed a petition alleging that Child was a child in need of services ("CHINS"). After an initial hearing on November 4, 2013, the juvenile court authorized Child's removal from Parents' care. Child was placed with maternal grandmother. On February 5, 2014, the juvenile court conducted a fact-finding hearing. Mother, who had returned to incarceration, admitted the Child was CHINS. On March 5, the juvenile court found Child was a CHINS and awarded wardship to DCS. The court also ordered Mother to participate in various services provided by DCS. Child remained in the care of maternal grandmother.

[4] Mother completed "Problem Solving Strategies for Successful Reentry" by February 2015, and began parenting time while incarcerated under the supervision of Jan Shaver, a case manager with George Junior Republic.[2] Mother continued exercising parenting time and transferred to work release before returning to in-home detention on June 1, 2015. After returning home, Mother's "visits . . . progress[ed] in frequency [and] duration[.]" Transcript, Volume II at 115. Mother found employment and housing, which was an apartment shared with Father. Maternal grandmother, who supervised visits,

---

[2] Mother also began an intensive outpatient program but was unable to complete the program due to transferring facilities.

moved with Child to an apartment downstairs. Shaver testified Mother was "doing really well." *Id.* at 119. Overnight visits between Parents and Child began in October 2015, and, in January 2016, Parents began a trial home visit. In addition to Child, Parents also had five children between them from previous relationships.

[5] In February 2016, Mother was released from in-home detention and placed on probation. Kimberly Ross, Child's DCS family case manager, testified:

> [A]t that period of time, huh, it became very hard to locate either parent for drug screens, for drop-ins, for home-based, for any service at all, it became very difficult. The reasoning's were always work, but prior to that they had been working as well, and we had been able to get those services.

*Id.* at 167. Shaver also testified she "saw a difference probably end of February first of March 2016." *Id.* at 119. Due to Parents' infrequent contact with DCS, the trial home visit ended in April but Parents continued to have supervised visitation.

[6] Jessica Risher, a case manager with George Junior Republic, began supervising visits with Child in May 2016. Of the approximately forty scheduled visits between May and August, fourteen were missed by both Parents and at one visit in early June, Risher believed Mother was intoxicated. Mother failed five drug tests between June and August. On August 9, Mother was arrested for disorderly conduct and public intoxication after cutting herself, becoming disorderly, and "yelling and screaming." *Id*. at 78. Mother pleaded guilty to

public intoxication and received twenty-eight days incarceration. Additionally, Mother's probation was revoked in a prior case and she signed a plea agreement for a three-year sentence with eighteen months executed.

[7] On August 31, 2016, DCS filed a petition to terminate Parents' parental rights to Child. The juvenile court appointed counsel to represent Parents. On January 24, 2017, the court held a fact-finding hearing on DCS' termination petition. There, Child's Guardian Ad Litem ("GAL") recommended that termination of Parents' parental rights was in Child's best interests. Family Case Manager Ross testified that her concerns about Mother regarded substance abuse and the fact that she has been "in and out of jail for most of her children's lifetimes." *Id.* at 160. Regarding Father, Ross discussed Father's relapses and six arrests during Child's life.

[8] On February 23, 2017, the juvenile court entered a judgment terminating Parents' parental rights. In doing so, the court concluded there was a reasonable probability that the conditions that resulted in Child's removal and placement outside Parents' home would not be remedied and that termination of parental rights was in Child's best interest. Mother now appeals.

# Discussion and Decision

## I. Standard of Review

[9] We begin by emphasizing the right of parents to establish a home and raise their children is protected by the Fourteenth Amendment to the United States

Constitution. *In re D.D.,* 804 N.E.2d 258, 264 (Ind. Ct. App. 2004), *trans. denied.* However, the law provides for the termination of these constitutionally protected rights when parents are unable or unwilling to meet their parental responsibilities. *In re R.H.,* 892 N.E.2d 144, 149 (Ind. Ct. App. 2008). We subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *In re K.S.,* 750 N.E.2d 832, 837 (Ind. Ct. App. 2001).

[10] When reviewing the termination of parental rights, we do not reweigh the evidence or judge the credibility of witnesses. *In re D.D.,* 804 N.E.2d at 265. We only consider evidence, and reasonable inferences therefrom, most favorable to the judgment. *Id.* Furthermore, in deference to the trial court's unique position to assess the evidence, we only set aside its judgment terminating a parent-child relationship when it is clearly erroneous. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied*, 534 U.S. 1161 (2002).

[11] Where, as here, the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We must first determine whether the evidence supports the findings, then we determine whether the findings support the judgment. *Id.* Findings will only be set aside if they are clearly erroneous and findings are only clearly erroneous "when the record contains no facts to support them either directly or by inference." *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind. 1997).

# II. Termination Order

[12] Our supreme court has described the involuntary termination of parental rights as "an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed." *In re C.G.,* 954 N.E.2d 910, 916 (Ind. 2011). In order for the State to terminate parental rights, Indiana Code section 31-35-2-4(b)(2) provides the State must prove, in relevant part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

The State must prove the foregoing elements by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016).

[13] We note that "[i]t is common practice for our trial courts to conduct termination hearings as well as the CHINS proceedings underlying them involving multiple children and/or multiple parents in a single proceeding." *In re V.A.*, 51 N.E.3d at 1146. However, we must weigh the evidence as it pertains to each parent. *See id.*

[14] Mother argues the juvenile court's termination order is clearly erroneous because, she alleges, the State failed to present clear and convincing evidence to establish that: 1) the conditions that resulted in Child's removal will not be remedied and; 2) the termination of the parent-child relationship is in Child's best interests.

## A. Remedy of Conditions

[15] Mother challenges the sufficiency of the evidence supporting the juvenile court's determination that there is a reasonable probability the conditions that resulted in Child's removal would not be remedied.

[16] We engage in a two-step analysis to determine whether such conditions will be remedied: "First, we must ascertain what conditions led to [Child's] placement and retention in foster care. Second, we determine whether there is a reasonable probability that those conditions will not be remedied." *In re K.T.K.*, 989 N.E.2d 1225, 1231 (Ind. 2013) (quotation omitted). Here, Child was removed from Mother's care due to Mother's substance abuse issues and frequent incarcerations which have left Child outside of Mother's care except for a brief, five-month period.

## 1. Findings of Fact

Regarding this conclusion, Mother contests eleven of the juvenile court's thirty-seven findings of fact, alleging the findings were "unsupported by the record" and include "overstatements and hyperbole." Appellant's Brief at 21. Specifically, Mother challenges Findings 13, 15, 16, 24, 25, 27, 29, 31, 35, 36, and 37.

Finding 13: Mother contends Finding 13 that "both parents tested positive for illegal substances on multiple occasions[,]" Appealed Order at 3, was unsupported because Mother "only failed five tests" and "some of the failed test [sic] were for marijuana only." Appellant's Br. at 21 n.3. Although Mother only tested positive on five out of sixty-seven tests and the positive results only occurred between June and August 2016, the court's finding is still well supported by the record.

Finding 15: Mother takes issue with Finding 15 which states, "Substance abuse plagues the underlying Child in Need of Services cause." Appealed Order at 3. She argues that she had only two episodes of drug relapse and there was therefore "not a plague of substance abuse." Appellant's Br. at 22 n.4. This is nothing more than a quarrel with the trial court's phrasing and the record reveals repeated instances of substance abuse by both Father and Mother.

Finding 16: Mother contends the court's characterization in Finding 16 of the October 29, 2013, incident where she was hospitalized is unsupported because "[t]here was no evidence Mother used drugs while the children were home."

Appellant's Br. at 22 n.5 (citing Appealed Order at 3-4, ¶ 16: "The incident surrounded Mother's use of [illegal drugs] while the child was in the home . . . ."). Although there is a distinction to be made between the use of drugs in the sense of ingesting drugs, and the use of drugs as the act of being under their influence, such a distinction is not relevant here. The record reveals Mother tested positive near the time she was in the presence of the children. And, although this court has previously held that a "single admitted use of methamphetamine, outside the presence of the child and without more, is insufficient to support a CHINS determination," *Perrine v. Marion Cty. Office of Child Servs.*, 866 N.E.2d 269, 277 (Ind. Ct. App. 2007), here, Mother was neither wholly outside the presence of her children nor was this the only instance of drug use before the court.

[21] Finding 24: Mother challenges the court's finding that "Mother took very few steps to maintain her sobriety." Appealed Order at 5. To the contrary, Mother argues, she "took about the [sic] step that she could to get sober." Appellant's Br. at 22, n.6. The record reveals that Mother failed to complete a substance abuse treatment program despite DCS' repeated referrals, refused to participate in home-based counseling or therapy, tested positive for illegal substances on five occasions, and relapsed on two occasions. Again, the record supports the juvenile court's finding.

[22] Finding 25: Mother challenges the court's finding that the "willingness of the parents to comply with services declined after the Mother was released from In Home Detention . . . ." Appealed Order at 5. Mother contends that her

"desires to have a loving and caring relationship with her [child] never subsided in this case." Appellant's Br. at 22, n.7. We, of course, do not doubt Mother's love for Child but we must consider her *actions* leading to the case now before us. The record reveals that after Mother's release from in-home detention it became difficult to locate her for drug screens and drop-ins, she missed at least fourteen visits with Child, she failed to maintain her home-based case management appointments, and it was difficult to communicate with her. Mother's argument goes to the weight of the evidence and we remind her that we may not reweigh evidence or reassess witness credibility. *In re D.D.,* 804 N.E.2d at 265.

[23] Finding 27: Mother challenges the following finding:

> 27. As of the date of the hearing, the child had spent thirty four of his thirty nine months in the care of persons other than the parents. In that time, the child has experienced months where neither parent was able to be present in his life due to their own choices.

Appealed Order at 5. Specifically, Mother alleges this finding is unsupported because even while incarcerated, Mother called Child and the only period she has not been present is since Child's move to foster care. However, Family Case Manager Ross testified that Child had spent thirty-four months out of Parents' home and, although the record supports Mother having made phone contact with Child, such contact was minimal and certainly did not constitute a full presence in Child's life. Finding 27 is not clearly erroneous.

Finding 29: Mother argues the juvenile court's finding that Family Case Manager Ross and the GAL advised that Mother's "continued presence in [Child's] life is detrimental to [Child's] well-being[,]" Appealed Order at 5, is unsupported and that, conversely, the record shows Mother was "always good to her children." Appellant's Br. at 23 n.9. At the hearing, the GAL testified that

> looking at it from [Child's] perspective and considering the parents [sic] roll [sic], their conduct over and over seems to be the type of conduct that's going to be detrimental to [Child's] wellbeing.

Tr., Vol. II at 172. Similarly, Family Case Manager Ross testified "I definitely have concerns" regarding Mother's substance abuse issues and incarcerations. *Id.* at 159-60. Although the juvenile court oversimplifies Ross's testimony, we do not believe it renders the court's finding clearly erroneous.

Finding 31: Mother refutes the court's finding of her criminal record in Finding 31. The court found, in relevant part:

> 31. Mother's convictions range from Possession of Marijuana charged in 2000 and 2009 to False Informing charged in 2002 and 2010 and Burglary in 2011 and three separate convictions for burglaries in 2012. Mother was also convicted for a charge of Dealing in Methamphetamine in 2012.

Appealed Order at 6. The State admits this finding is unsupported and our review of the record reveals Mother has only one burglary conviction, not four. We must disregard any special finding that is not proper or competent to be

considered. *In re B.J.*, 879 N.E.2d 7, 19 (Ind. Ct. App. 2008), *trans. denied*. However, given Mother's remaining criminal history and the court's other accurate findings, we find such error harmless. *See id.* (affirming termination of parental rights despite erroneous finding based on testimony stricken from the record because the error did not "constitute the sole support for any conclusion of law necessary to sustain the judgment"); *Matter of A.C.B.,* 598 N.E.2d 570, 573 (Ind. Ct. App. 1992) (affirming termination of parental rights despite erroneous findings because error was "not of such magnitude that it calls into question the court's conclusion" that termination was in child's best interests).

[26] Finding 35: Mother challenges the juvenile court's finding that "Mother finds herself in roughly the same position today as she was in at the time of removal in October 2013." Appealed Order at 6. Specifically, Mother contends that at the time of Child's removal she had criminal matters pending in three counties but now, after her current incarceration ends, she "will have no more criminal obligations." Br. of Appellant at 23, n.11. We view this finding as an overall summary regarding Mother's current position and, as such, the finding is not clearly erroneous. Mother has taken few steps regarding her substance abuse issues, and, as opposed to the time of removal, Mother is currently incarcerated.

[27] Finding 36: The court found "Mother missed multiple parent time sessions after she was released from In-Home Detention in 2016 . . . ." Appealed Order at 6. Mother argues the court's finding suggests the sessions were missed without good excuse. We disagree and conclude the record supports Finding 36.

[28] Finding 37: The court also found, in relevant part:

> 37. The mere possibility that either parent will put forth the effort to obtain and maintain sobriety is so infinitesimal as to lead this court to find it will be unlikely that either parent, together or separate, will remedy their substance abuse issues or to place themselves in a position where they can provide for their young child.

Appealed Order at 7. Mother argues that the finding is contrary to the evidence. For reasons discussed in greater detail below, we disagree and conclude the record supports the court's finding.

[29] Having reviewed Mother's challenge to eleven of the juvenile court's thirty-seven findings of fact, we conclude all—save one—are supported by the record. And, to the extent that Finding 31 misstates Mother's criminal history, such error is harmless.

## 2. Probability Conditions Will Not Be Remedied

[30] Mother also argues the State failed to prove there was a reasonable probability the conditions leading to Child's removal will not be remedied. In determining whether the conditions that led to a child's removal will not be remedied, the juvenile court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010).

[31] The court's inquiry must also evaluate a parent's habitual pattern of conduct to determine the probability of future neglect or deprivation of the child. *Id.* On

this point, considerations of the court may properly include "evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment." *A.F. v. Marion Cty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied.* Additionally, the court may consider the services offered by DCS and the parent's response to those services. *Id.* at 1252.

[32] Mother contends her condition has changed so that she shows a readiness to parent. She notes her imminent release from incarceration and the fact that she will be "cleared of all criminal obligations in 14 months and can focus on drug treatment and reunification with her children." Appellant's Br. at 24 n.11. The juvenile court, however, found:

> Mother finds herself in roughly the same position today as she was in at the time of removal in October 2013. Once again, Mother appears to be well on her way to be given an opportunity at being rehabilitated through incarceration. However, Mother's previous release from the Indiana Department of Correction in 2015 led to the series of events, and multiple decisions placing herself and her wants above the needs of her child that proceeded the request to terminate her parental rights.

Appealed Order at 6, ¶ 35. As discussed above, we cannot say this finding is clearly erroneous.

[33] Despite being counseled to participate in a substance abuse program for some four years, Mother has yet to complete such a program. The record also evinces Mother's apparent inability to consistently engage in services aimed at

reunifying her with Child. Mother was difficult to locate or communicate with, missed at least fourteen visits with Child, and failed to maintain her home-based case management appointments. *See Lang v. Starke Cty. Office of Family & Children,* 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) ("A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change."), *trans. denied*.

[34] Moreover, a parent's history of incarceration and the effects upon the children is also a relevant consideration. *In re A.A.C.*, 682 N.E.2d 542, 545 (Ind. Ct. App. 1997). We have previously noted individuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children. *In re A.C.B.*, 598 N.E.2d 570, 572 (Ind. Ct. App. 1992). Here, on more than one occasion, Mother's conduct has led to her being arrested and Child being left without her. Mother has both violated her probation and committed new offenses since Child's birth.

[35] Evidence of changed conditions is balanced against habitual patterns of conduct to determine whether there is a substantial probability of future neglect and we give deference to the juvenile court in balancing this evidence. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). Given Mother's repetitive criminal history, her inability to consistently engage in services, and our deference to the juvenile court in such matters, we cannot say the juvenile court clearly erred in

concluding the evidence shows a reasonable probability the conditions resulting in Child's removal will not be remedied.[3]

## B. Best Interests

[36] Mother also contends DCS failed to prove termination of her parental rights was in Child's best interest. In determining the best interests of a child, the juvenile court must "look beyond the factors identified by the DCS and look to the totality of the evidence." *In re H.L.*, 915 N.E.2d 145, 149 (Ind. Ct. App. 2009). Moreover, the juvenile court "need not wait until the child is irreversibly harmed such that the child's physical, mental and social development is permanently impaired before terminating the parent-child relationship." *In re K.T.K.,* 989 N.E.2d at 1235. Rather, recommendations of the case manager, court-appointed advocate, and evidence tending to show that the conditions resulting in removal will not be remedied is sufficient to show termination is in the child's best interests by clear and convincing evidence. *See, e.g., In re A.I.,* 825 N.E.2d 798, 811 (Ind. Ct. App. 2005), *trans. denied.*

---

[3] Mother also argues the juvenile court erred in finding her continued custody poses a threat to the Child's well-being. However, Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires only one element be proven to terminate Mother's parental rights. *See In re I.A.*, 903 N.E.2d 146, 153 (Ind. Ct. App. 2009); *In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct. App. 1999), *trans. denied, cert. denied*, 543 U.S. 1161 (2002). Having concluded the evidence is sufficient to show a reasonable probability the conditions resulting in Child's removal will not be remedied, we need not consider whether the parent-child relationship poses a threat to Child's well-being.

[37] Mother contends Findings 1, 2, 3, 4, 9, 10, 11, and 12 of the Appealed Order regarding Child's best interests were not supported by the record and that the remaining supported findings do not lead to the conclusion that termination of the parent-child relationship is in Child's best interest. Appellant's Br. at 17. Mother fails, however, to form a cogent argument or provide citations to the record regarding how these findings are unsupported. Accordingly, Mother has waived such argument. *See* Ind. Appellate Rule 46(A)(8)(a); *In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007) (finding mother had waived a challenge of the juvenile court's findings or conclusions by failing to make a cogent argument).

[38] As discussed above, there is sufficient evidence the conditions resulting in Child's removal will not be remedied, and the GAL testified that termination of Mother's parental rights was in Child's best interests. Additionally, Mother has not demonstrated an ability to effectively use the services recommended to her. *See In re T.F.,* 743 N.E.2d 766, 776 (Ind. Ct. App. 2001), *trans. denied*. Permanency is a central consideration in determining the best interests of a child. *In re G.Y.*, 904 N.E.2d 1257, 1265-66 (Ind. 2009). Here, Child has been outside the care of Mother for all but five months of life and it is uncontested that Child is doing well in foster placement. Accordingly, the juvenile court did not err in its determination of Child's best interests.

# Conclusion

Concluding the juvenile court's decision to terminate Mother's parental rights was not clearly erroneous, we affirm.

Affirmed.

Riley, J., and Pyle, J., concur.