598 N.E.2d 570 (1992)
In the matter of the Termination of the Parent Child Relationship of A.C.B.
Barry St. John, Appellant-Respondent
v.
MARION COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee-Petitioner.
No. 49A05-9201-JV-3.
Court of Appeals of Indiana, Fifth District.
August 31, 1992.
*571 Marilyn A. Moores, Cohen & Malad, Indianapolis, for appellant-respondent.
Derelle Watson-Duvall, Marion County Dept. of Public Welfare, Michael Fleener, Child Advocates, Inc., Indianapolis, for appellee-petitioner.
BARTEAU, Judge.
Barry St. John appeals the trial court's decision terminating his parental rights with respect to his six year old daughter, A.B. We consolidate and restate the issues as follows:
1. Is a formal adjudication of paternity a prerequisite to terminating a father's parental rights?
2. Did the trial court apply an erroneous standard of proof?
3. Did the trial court err in taking judicial notice of an adjudication of paternity which took place in another court and after the close of evidence?
4. Are the findings of the trial court contrary to the evidence?

FACTS
A.B.'s conception occurred during her fifteen year old mother's co-habitation with Appellant Barry St. John. Following A.B.'s birth, the Marion County Department of Public Welfare (MCDPW) obtained custody and placed A.B. in foster care. She was later determined to be a Child In Need Of Services (CHINS) and the parental rights of her mother were involuntarily terminated. A.B. has resided with the same foster family since she was thirteen days old. A.B. is now six years old and her foster parents wish to adopt her.
St. John was incarcerated at the time of A.B.'s birth and remains in prison, serving a twenty three year sentence for armed robbery. His earliest anticipated release date arrives in three years. Because St. John and A.B.'s mother were never married, his paternity of A.B. was not legally established.[1]

ESTABLISHMENT OF PATERNITY
St. John contends that adjudication of paternity is a prerequisite to termination of parental rights, relying on principles of equity to support his contention. In essence, St. John proposes that if his assertion that he was A.B.'s biological father was insufficient to enable him to establish legal paternity, and thus receive the attendant rights and benefits, then the same assertion should be insufficient to support the court's finding of paternity, and thus insufficient to support extinguishment of his parental rights.
*572 We find no merit in St. John's contention. First, his claim that he did not receive the benefits normally afforded to adjudicated fathers is generally unsupported by the record. He was notified of the CHINS proceeding and transported from the prison to the court for each hearing. He was given the opportunity to be heard and admitted that A.B. was a CHINS. He neither objected to her placement in foster care nor provided an alternative plan. St. John's request for the appointment of counsel to represent him in the CHINS proceeding was treated no differently than that of any other parent.
Second, his claim that he was denied the opportunity to bond with A.B. and to visit with her due to his status as a non-adjudicated father is unsupported by the record. Visitation was denied because the court found it was not in A.B.'s best interest, and while the fact paternity had not been established was a consideration, it was not the sole basis for the decision. Further, St. John's inability to bond and visit with A.B. is due more to his own actions, which resulted in his incarceration, than with his failure to establish legal paternity. Individuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children.
Third, even if we would find some inequity in St. John's treatment during the CHINS proceeding due to his status as a non-adjudicated father, that fact would not persuade us that equity demands that an admitted biological father be formally adjudicated as such in order for the court to turn around and terminate his parental rights.
Fourth, the statutes governing the termination of parental rights do not require an adjudication of paternity prior to termination. Indiana's Juvenile Code defines "parent" as "a biological or adoptive parent" and states that unless otherwise specified, the definition of "parent" includes both parents, regardless of their marital status. Ind. Code 31-6-1-23. "Parent" is not otherwise defined in I.C. 31-6-5-4, the involuntary termination statute. Further, I.C. 31-6-5-2, the voluntary termination statute, requires the consent of the "parents" in order to terminate, and specifically mentions that alleged and adjudicated fathers fit this category. Thus, it is not mandatory to establish paternity before instituting termination proceedings.

STANDARD OF PROOF
Each of the statutory requisites for termination of the parent-child relationship must be established by clear and convincing evidence. I.C. XX-X-X-XX(a); Santosky v. Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599; Shaw v. Shelby County Department of Public Welfare (1992), Ind. App., 584 N.E.2d 595. The order terminating St. John's parental rights is silent as to the standard of proof utilized by the trial court in reaching its determination. St. John cites Van Hoosier v. Grant County Department of Public Welfare (1982), Ind. App., 443 N.E.2d 350, in support of his contention that the absence of language indicating the trial court utilized the "clear and convincing evidence" standard requires remand for determination under this standard of proof. While this court did remand for determination under the clear and convincing standard in Van Hoosier due to the silence of the order concerning the applicable standard of proof, such action was warranted because the standard had recently been raised from "preponderance of the evidence" to "clear and convincing evidence" and it was unclear from the trial court's order whether it had considered the evidence under the new, higher standard. However, unlike in Van Hoosier where the higher standard had been recently implemented, at the time St. John's case was tried, the clear and convincing evidence standard had been in effect for approximately ten years. Thus, the absence of language indicating use of the clear and convincing standard no longer suggests use of the lesser preponderance of the evidence standard. Absent additional evidence that the court labored under the wrong standard of proof, a silent record will not support an allegation of error.

*573 JUDICIAL NOTICE
St. John alleges that the court improperly took judicial notice of the outcome of his paternity proceeding. At the time the termination of parental rights was tried, St. John's paternity petition was pending. Prior to the court's ruling in the termination proceeding, the paternity petition was granted and St. John was adjudicated to be A.B.'s father. In the order terminating St. John's parental rights, finding number 18 states "Barry St. John filed a paternity petition and paternity was established." While it was improper for the court to take judicial notice of the outcome of the paternity proceeding, In re Paternity of Tomkins (1989), Ind. App., 542 N.E.2d 1009, we fail to see how St. John was prejudiced by the error. Error alone on the part of the trial court does not mandate reversal. Atwood v. Prairie Village, Inc. (1980), Ind. App., 401 N.E.2d 97. Error must result in prejudice in order to disturb the judgment. Id. While he alleges prejudice, St. John never enlightens us as to the nature of the prejudice. A.B.'s paternity was never contested. St. John always claimed biological parenthood and the paternity proceeding did no more than legally acknowledge his status. Had St. John denied paternity and no other evidence establishing the same been introduced, then consideration of the results of the paternity proceeding might be prejudicial. However, in the situation before us, the results of the paternity proceeding were merely cumulative of what St. John had alleged all along: paternity of A.B. Thus, we find no prejudice resulting from improper consideration of the paternity results.
In a related argument, St. John contends that the trial court's conclusion of law that he is A.B.'s biological father is unsupported by the findings of fact, due to the erroneous consideration of finding number 18 concerning the results of the paternity proceeding. However, finding number 2 refers to "[A.B.'s] father, Barry St. John" and thus supports the conclusion of law. Again, the issue of paternity was never contested at trial and while St. John alleges prejudice from the trial court's error in considering extraneous matters, he fails to demonstrate the nature of the prejudice.

ERRONEOUS FINDINGS
St. John asserts that two of the court's findings are unsupported by the record, thereby tainting the conclusions of law and requiring a new trial.
The court made factual finding number 10 that "Barry St. John has received no counseling or drug treatment while in prison." St. John testified that he received training as a peer counselor, a position which entails counseling other inmates with drug and alcohol problems, and that he was not currently addicted to alcohol and drugs. However, when questioned whether he himself had received any drug or alcohol counseling, St. John testified that he had not. Thus, finding number 10 is a correct statement of the evidence.
The court made factual finding number 12 that "Barry St. John stated that he could and would provide for A.B. financially through illegal activities while at the Indiana Reformatory such as the sale of illegal drugs, tattooing, and running a clandestine prison `store'." In reality, St. John testified that he would support A.B. "By making money in the institution, it might be illegal, but if I've got no other way, I would do whatever I had to support my child ... playing pool, playing cards, tattooing, running a store." Contrary to the court's finding, St. John never testified that he would make money by selling illegal drugs. This error, however, is not of such magnitude that it calls into question the court's conclusion that A.B.'s best interests would not be served by returning her to St. John's care, if that were even possible. Matter of D.T. (1989), Ind. App., 547 N.E.2d 278. Excluding the erroneous finding that St. John would support A.B. through the sale of illegal drugs makes his plan to support her through various other illegal activities no less inappropriate. The trial court's error in including the illegal sale of drugs is harmless when considered *574 in conjunction with the other evidence presented.
AFFIRMED.
RUCKER and CHEZEM, JJ., concur.
NOTES
[1] St. John's petition to establish paternity was granted following trial but prior to issuance of the court's decision.