**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**RONALD E. McSHURLEY**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES E. MOORE**
Department of Child Services
Muncie, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

FILED
Dec 28 2012, 9:04 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE TERMINATION OF THE )
PARENT-CHILD RELATIONSHIP OF )
K.K. (Minor Child) and )
)
R.I. (Father), )
)
    Appellant-Respondent, )
)
        vs. )    No. 18A02-1205-JT-434
)
THE INDIANA DEPARTMENT OF CHILD )
SERVICES, )
)
    Appellee-Petitioner. )

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Alan K. Wilson, Judge
The Honorable Brian M. Pierce, Magistrate
Cause No. 18C02-1108-JT-23

**December 28, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

R.I. ("Father") appeals the trial court's involuntary termination of his parental rights to his child, K.K.  We affirm.

## Facts and Procedural History

Except as noted below, Father does not challenge the correctness of the factual findings in the trial court's termination order, which reads in pertinent part as follows:

1. That [Father] is the father of [K.K.], born June 4, 2010.

2. That [K.K.] was removed from her parents by Order at a Detention Hearing held June 7, 2010 in the underlying Child in Need of Services (CHINS) cause ….[1]

3. That, since removal, [K.K.] was not returned to the care of either of her parents.

4. That the child was adjudicated to be a CHINS in a hearing held on September 21, 2010.

5. That a Permanency Plan of Adoption was approved at a hearing on June 6, 2011.

6. That [Father] has continuously resided in prison for the duration of the underlying CHINS cause.

7. That [Father] has continuously resided in prison for the duration of the child's life.

8. That [Father] currently resides in prison serving an eight (8) year sentence for two counts of Felony Battery.

9. That [Father] has never had any contact with the child.

---

[1] According to DCS case manager Krista Garrett, both K.K. and her mother tested positive for cocaine, benzodiazepines, and marijuana at the time of K.K.'s birth.  Tr. at 20.  The mother's parental rights were later terminated.

10. That [Father's] earliest possible release date from prison is January 21, 2014.

11. That [Father] has an extensive history of Felony convictions and incarcerations from multiple crimes committed in multiple Indiana counties extending back at least as far as 1990.

12. That [Father] has demonstrated, consistently over an extended period of time, an inability both to abide by the law and remain out of prison.

13. That since the child has been placed in foster care the child has shown systematic and consistent improvement in her development.

Appellant's App. at 38.

On August 3, 2011, the Department of Child Services ("DCS") filed a petition for the involuntary termination of Father's parental rights. After a hearing, on April 25, 2012, the trial court issued its termination order, which contains the following additional findings and conclusions:

14. That the child needs a safe, stable, secure and permanent environment in order to thrive. [Father] has not demonstrated the ability to provide the child with such an environment.

15. That the CASA agrees that it is in the best interest of the child to terminate the parental rights of [Father].

16. That based on the foregoing there is a reasonable probability that the conditions that resulted in the child's removal will not be remedied.

17. That based on the foregoing there is a reasonable probability that the continuation of the parent/child relationship herein poses a threat to the well being of the child.

18. Termination of the parent/child relationship is in the best interest of the child.

19. The Indiana DCS has a satisfactory plan for the care and treatment of the child, which includes adoption.

3

20.     The Indiana DCS has proven [its] petition herein by clear and convincing evidence.

IT IS NOW THEREFORE ORDERED that the parent/child relationship between [Father] and [K.K.] is hereby terminated together with all rights and privileges contained therein.

*Id*. at 38-39.  Father now appeals.

## Discussion and Decision

Indiana Code Section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:[2]

(2) The petition must allege:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

---

[2] Indiana Code Section 31-35-2-4 was amended slightly in 2012.  We quote the version of the statute in effect when DCS filed its termination petition in 2011.

4

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove "each and every element" by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009); Ind. Code § 31-37-14-2. Clear and convincing evidence requires the existence of a fact to be highly probable. *Hardy v. Hardy*, 910 N.E.2d 851, 859 (Ind. Ct. App. 2009). "Clear and convincing evidence need not show that the custody by the parent is wholly inadequate for the child's survival. Instead, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development would be threatened by the parent's custody." *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010) (citation omitted). If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re I.A.*, 903 N.E.2d 146, 152-53 (Ind. Ct. App. 2009). We neither reweigh evidence nor assess witness credibility. *Id.* at 153. We consider only the evidence favorable to the trial court's judgment and the reasonable inferences therefrom. *Id.* Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered

5

standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the conclusions. *Id.* "We will set aside a judgment only when it is clearly erroneous. A judgment is clearly erroneous when the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *A.B.*, 924 N.E.2d at 669. Clear error is that which "leaves us with a definite and firm conviction that a mistake has been made." *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

The only factual finding that Father challenges is the trial court's determination that his earliest possible release date from prison is January 21, 2014. Father testified that he could be released as early as September 21, 2012, but he offered no documentation to support his claim. This challenge is merely an invitation to reweigh evidence and judge credibility, which we may not do. *I.A.*, 903 N.E.2d at 152-53.

Father also challenges three of the trial court's conclusions: (1) that there is a reasonable probability that the conditions that resulted in K.K.'s removal will not be remedied; (2) that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to K.K.'s well-being; and (3) that termination of the parent-child relationship is in K.K.'s best interests.[3] Father's argument is as follows:

> The Court's Order Terminating Father's Rights clearly states that the sole reason for terminating his rights was his criminal history and current incarceration. There was absolutely no evidence to prove that if released from prison [Father] could not properly care for the child, that he had any history of

---

[3] We note that DCS was required to prove either (1) or (2), but not both, pursuant to Indiana Code Section 31-35-2-4(b)(2)(B).

6

abuse, neglect or substantial [sic] abuse issues, or that he could not financially provide for his daughter.

Appellant's Br. at 7.

Father's argument substantially minimizes his significant criminal history. At the termination hearing, Father candidly acknowledged that he had spent only one year out of prison since 1990. He impregnated K.K.'s mother during that hiatus and was reincarcerated before K.K. was born. Father has accumulated approximately half a dozen felony convictions ranging from battery to burglary to theft. He is currently incarcerated for battering a prison guard, and he avoided a habitual offender adjudication by pleading guilty to that crime.[4] Clearly, Father has demonstrated that he cannot behave responsibly either inside or outside prison walls.

We have said that

[i]n judging a parent's fitness, the trial court should examine the parent's fitness at the time of the termination hearing, as well as the parent's habitual patterns of conduct, to determine whether there is a substantial probability of future neglect or deprivation of the child. A court may properly consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment.

*McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003) (citation omitted). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests."

---

[4] Father claimed that another inmate battered the guard, but the trial court was entitled to disbelieve this self-serving testimony.

7

*Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans*. *denied*. "The purpose of terminating parental rights is not to punish parents but to protect their children. Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents." *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004) (citation omitted). "Individuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children." *Matter of A.C.B.*, 598 N.E.2d 570, 572 (Ind. Ct. App. 1992).

Father, who was born in 1965, has spent most of his adult life behind bars and has never had any contact with his daughter. Assuming that he will be released from prison in January 2014, K.K. will be almost four years old. Father has not demonstrated that he will be able to obtain (and maintain) adequate housing and employment or demonstrate the appropriate parenting skills that would be necessary to gain custody of his daughter, who has bonded with her foster family and needs stability and permanency. Given Father's extensive criminal history, it is also highly questionable whether he will be able to remain out of prison. As we said in another case involving a parent who had been incarcerated since before his child's birth, "[e]ven assuming that [Father] will eventually develop into a suitable parent, we must ask how much longer [K.K.] should have to wait to enjoy the permanency that is

essential to her development and overall well-being." *Castro*, 842 N.E.2d at 375.[5] In sum,

we cannot say that the trial court's conclusions are clearly erroneous. Therefore, we affirm

its order terminating Father's parental rights.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.

---

[5] Father contends that the facts of this case are "strikingly similar" to those in *Rowlett v. Vanderburgh County Office of Family & Children*, 841 N.E.2d 615 (Ind. Ct. App. 2006), *trans. denied*, in which another panel of this Court reversed an order terminating the incarcerated father's parental rights. Appellant's Br. at 7. We disagree. Unlike Father, Rowlett was living with his children when they were removed by DCS and had not spent nearly as much time in prison.