# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jan 30 2017, 10:08 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of: | January 30, 2017 |
| C.H. (Minor Child), | Court of Appeals Case No. 21A01-1609-JT-2108 |
| and | |
| D.S. (Father), | Appeal from the Fayette Circuit Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Beth A. Butsch, Judge |
| The Indiana Department of Child Services, | Trial Court Cause No. 21C01-1601-JT-15 |
| *Appellee-Petitioner.* | |

**Pyle, Judge.**

## Statement of the Case

D.S. ("Father") appeals the termination of the parent-child relationship with his son, C.H. ("C.H."), claiming that there is insufficient evidence to support the termination because the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that termination of the parent-child relationship is in C.H.'s best interests.[1] Concluding that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm the trial court's judgment.

We affirm.

## Issue

Whether there is sufficient evidence to support the termination of the parent-child relationship.

## Facts

Father was incarcerated for dealing heroin in late 2014 or early 2015. When C.H. was born in January 2015, his urine tested positive for opiates and methadone. Mother admitted that she had used heroin while she was pregnant. While C.H. was hospitalized with withdrawal symptoms, DCS filed a petition alleging that he was a child in need of services ("CHINS") in February 2015.

---

[1] C.H.'s mother ("Mother") is not a party to this appeal.

At the March 2015 initial hearing, Father admitted that C.H. was a CHINS. In January 2016, DCS filed a petition to terminate both parents' parental rights.

[4] Evidence presented at the August 2016 hearing revealed that Father had never met C.H. Father testified that he had no relationship with C.H. Father's earliest release date from the Miami Valley Correctional Facility ("Miami Valley") was April 20, 2017. He had attempted to get a "time cut" on his sentence, but it was denied because he had a previous write-up for fighting at the county jail. (Tr. 15). Father testified that upon his release from prison, he planned to live with his brother and work at some sort of job his Miami Valley friends had "lined up" for him. (Tr. 16). Father also testified that he had completed two parenting programs at the county jail and one at Miami Valley.

[5] DCS Family Case Manager Doreen Hayes ("Case Manager Hayes") testified that although Father had participated in these parenting programs, when she told him that DCS was "filing to change the . . . plan for [C.H.] to adoption," Father told her that he did not want to participate in any further services. Specifically, Father told Case Manager Hayes that he "was just done." (Tr. 29). She further testified that adoption, and therefore termination, was in C.H.'s best interests because of the length of time he had already been removed from his parents and his need for permanency. Case Manager Hayes also shared her concerns that Father was unable to provide stable housing and income for C.H.'s basic needs. CASA Michelle Richardson also recommended termination of Father's parental rights.

In August 2016, the trial court issued an order terminating Father's parental rights. Father appeals the termination.

# Decision

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *K.T.K.*, 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id*. Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

A petition to terminate parental rights must allege:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1231.

[10] Here, Father's sole contention is that there is insufficient evidence to support the termination because the State failed to prove by clear and convincing evidence that termination is in C.H.'s best interests. In support of his contention, he directs us to *In re the Involuntary Termination of the Parent-Child Relationship of R.S.*, 56 N.E.3d 625 (Ind. 2016), where the Indiana Supreme Court reversed a termination of parental rights after concluding that the State had failed to prove that termination was in R.S.'s best interests.

[11] However, the facts in *R.S.* are distinguishable from the facts of this case. R.S. was an eleven-year-old boy who had a close bond with his father. *Id.* at 629-30. R.S.'s father exercised regular visitation with R.S. and repeatedly expressed his

desire to parent his son. *Id.* at 630. Both the GAL and the trial court believed that visitation between R.S. and his father was in R.S.'s best interests. *Id.* at 628, 630. On the other hand, in this case, Father has never met C.H. because Father was in jail for dealing heroin when C.H. was born with opiates and methadone in his system. Furthermore, Father admitted that he had no relationship with his toddler son. Also, when Caseworker Hayes told Father that DCS was filing to change the plan for C.H. to adoption, Father responded that he "was just done." (Tr. 29). In addition, the CASA recommended termination of the parent-child relationship.

[12]   We find *Castro v. State Office of Family and Children*, 842 N.E.2d 367 (Ind. Ct. App. 2006), *trans. denied*, to be more instructive. There, Castro had been incarcerated for the entire lifetime of his daughter, T.P. In September 2004, when T.P. was eight years old, DCS filed a petition to terminate the parental relationship between T.P. and both parents. The evidence at the termination hearing revealed that Castro had held T.P. in his arms one time and had seen her approximately ten other times while incarcerated in the county jail. After he was sentenced to the Department of Correction, he had also written T.P. letters, which were conveyed to her through her therapist. The evidence further revealed that while incarcerated, Castro had received a Bachelor of General Studies degree and completed parenting and anger management courses. His release date was May 2012.

[13]   After hearing the evidence, the trial court issued an order terminating Castro's parental rights. Castro appealed and argued that DCS had failed to present

clear and convincing evidence that termination of the parent-child relationship was in T.P.'s best interests. We noted that a parent's historical inability to provide adequate housing and supervision coupled with a current inability to provide the same would support a finding that termination of the parent-child relationship is in the child's best interests. *Id.* at 374. Because he had been incarcerated since before T.P.'s birth, we concluded that Castro had historically been unable to provide adequate housing, stability, and supervision for her. *Id.* Likewise, Castro's continued incarceration at the time of the June 2005 termination hearing was strong evidence of his current inability to provide the same. *Id.*

[14] We further recognized that "'[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children.'" *Id.* (quoting *Matter of A.C.B.*, 598 N.E.2d 570, 572 (Ind. Ct. App. 1992)). We also noted that there was no guarantee that Castro would be a suitable parent once he was released or that he would even obtain custody. *Id.* Even assuming Castro would eventually develop into a suitable parent, we had to ask how much longer T.P. had to wait to enjoy the permanency that was essential to her development. *Id.* at 375. In light of this evidence, we concluded that the trial court's conclusion that termination of Castro's parental rights was in T.P.'s best interests was supported by clear and convincing evidence. We further concluded that there was sufficient evidence to support the termination of the parent-child relationship. *Id.*

Here, as in *Castro,* Father has historically been unable to provide adequate housing, stability, and supervision for C.H. Likewise, his continued incarceration at the time of the termination hearing is strong evidence of his current inability to provide the same. Father has been incarcerated since C.H. was born with opiates in his system. Without stable housing and employment, there is no guarantee that Father would be a suitable parent once he was released or that he would even obtain custody. In light of this evidence, here, as in *Castro*, we conclude that the trial court's determination is supported by clear and convincing evidence, and there is therefore sufficient evidence to support the termination.

Affirmed.

Baker, J., and Mathias, J., concur.