## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2017, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven J. Halbert
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Matter of the Involuntary Termination of the Parent-Child Relationship of:
K.M., H.M., K.M. *(Minor Children),* and

H.J. *(Mother),*

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner,*
and

Child Advocates, Inc.,

*Appellee (Guardian ad Litem).*

December 29, 2017

Court of Appeals Case No.
49A05-1707-JT-1498

Appeal from the Marion Superior Court

The Honorable Marilyn Moores, Judge

The Honorable Scott Stowers, Magistrate

Trial Court Cause Nos.
49D09-1609-JT-1034
49D09-1609-JT-1035
49D09-1609-JT-1036

**Robb, Judge.**

# Case Summary and Issue

[1] H.J. ("Mother") appeals the juvenile court's termination of her parental rights to her three children. Mother presents two issues for our review which we consolidate and restate as whether the juvenile court's termination order is clearly erroneous. Concluding the termination order is not clearly erroneous, we affirm.

# Facts and Procedural History

[2] Mother and Ka.M. ("Father")[1] (collectively, "Parents") have three children, five-year-old K.M., three-year-old H.M., and two-year-old Kh.M. ("Children"). On August 17, 2015—before Kh.M. was born—the Indiana Department of Child Services ("DCS") filed a petition alleging K.M. and H.M. were children in need of services ("CHINS") due to Parents' history of drug use and the family's lack of stable housing. DCS removed K.M. and H.M. from their Parents' care and placed them with relatives. On September 4, 2015, Parents admitted that because of their substance abuse issues, K.M. and H.M. were

---

[1] The juvenile court also terminated Father's parental rights. Father, however, does not participate in this appeal.

CHINS and the court ordered continued placement in relative care. With the goal of reunification, the juvenile court ordered Parents to engage in a substance abuse assessment, home-based therapy, and random drug screens. The juvenile court authorized Parents to reside in the relative caregiver's home after the completion of four consecutive, clean, non-diluted drug screens.

[3] On December 4, 2015, the juvenile court conducted a periodic review hearing. There, DCS reported that Parents were participating in home-based therapy and their drug screens were negative. However, on December 10, DCS filed a petition alleging newborn Kh.M. was a CHINS after Kh.M. tested positive for codeine, heroin, and marijuana at birth. Following a fact-finding hearing on February 19, 2016, where Parents admitted Kh.M. was a CHINS, the juvenile court entered a parental participation order that required Parents engage in home-based therapy, random drug screens, and substance abuse treatment. Kh.M. was adjudicated a CHINS and placed in relative care.

[4] The juvenile court conducted another periodic review hearing on March 4, 2016. There, DCS expressed concern that Parents resided at the home of the relative caregiver and stated that Mother had not been calling in order to submit to drug screens. The juvenile court ordered Parents to remove their belongings from relative caregiver's home.

[5] By June 2016, K.M. and H.M. were in foster care while Kh.M. remained in relative care. At a hearing on June 10, DCS reported that Mother had tested positive on June 1 for opiates and methamphetamines and the court found Mother had actively prevented DCS from obtaining information about her

chosen services. The court ordered Mother to comply with services arranged by DCS rather than continue being able to arrange her own services. Parents failed to attend a permanency hearing on August 12. There, DCS reported Parents had not engaged in substance abuse treatment and requested the permanency plan for H.M. and K.M. change to adoption. The juvenile court reset the hearing for August 26, and ordered Parents to appear.

[6] Parents again failed to appear on August 26. The Guardian Ad Litem agreed with DCS' request to change the permanency plan to adoption. The juvenile court found that Parents had "struggled with heroin addiction since these matter[s] were filed." Exhibits, Volume III at 12. The court also found that because Parents had not engaged in services to address these issues it was in the Children's best interests for the plan to change from reunification to adoption. The juvenile court granted DCS' motion to suspend visitation shortly thereafter.

[7] On September 6, 2016, DCS filed petitions to terminate Parents' parental rights to all three Children. On January 23, 2017, Mother was arrested and charged with possession of a syringe, a Level 6 felony. On May 6, 2017, Mother was arrested again and charged with possession of a narcotic drug, possession of methamphetamine, and possession of a syringe, all Level 6 felonies. Following an evidentiary hearing spanning the course of three days, the juvenile court terminated Parents' parental rights on June 8, 2017. Mother now appeals.

# Discussion and Decision

## I. Standard of Review

[8] The right of parents to establish a home and raise their children is protected by the Fourteenth Amendment to the United States Constitution. *In re D.D.,* 804 N.E.2d 258, 264 (Ind. Ct. App. 2004), *trans. denied.* However, the law provides for the termination of these constitutionally protected rights when parents are unable or unwilling to meet their parental responsibilities. *In re R.H.*, 892 N.E.2d 144, 149 (Ind. Ct. App. 2008).

[9] When reviewing the termination of parental rights, we do not reweigh the evidence or judge the credibility of witnesses. *In re D.D.,* 804 N.E.2d at 265. We only consider evidence, and reasonable inferences therefrom, most favorable to the judgment. *Id.* Furthermore, in deference to the trial court's unique position to assess the evidence, we will set aside its judgment terminating a parent-child relationship only when it is clearly erroneous. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied*, 534 U.S. 1161 (2002).

[10] Where, as here, the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We must first determine whether the evidence supports the findings, then we determine whether the findings support the judgment. *Id.* Findings will be set aside only if they are clearly erroneous and findings are clearly erroneous only "when the record contains no

facts to support them either directly or by inference." *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind. 1997).

# II. Remedy of Conditions

[11] Our supreme court has described the involuntary termination of parental rights as "an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed." *In re C.G.,* 954 N.E.2d 910, 916 (Ind. 2011). In order for the State to terminate parental rights, Indiana Code section 31-35-2-4(b)(2) provides the State must prove, in relevant part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

The foregoing elements must be proved by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016).

[12]     On appeal, Mother argues that DCS failed to prove by clear and convincing evidence that the conditions that resulted in the Children's removal will not be remedied. When considering whether the conditions that resulted in a child's removal will be remedied, we engage in a two-step analysis: "First, we must ascertain what conditions led to [child's] placement and retention in foster care. Second, we determine whether there is a reasonable probability that those conditions will not be remedied." *In re K.T.K.*, 989 N.E.2d 1225, 1231 (Ind. 2013) (quotation omitted).

[13]     The juvenile court found:

> 38. There is a reasonable probability that the conditions that resulted in the [C]hildren's removal and continued placement outside of the home will not be remedied by their parents. [Parents] have had well over a year and a half to put forth an effort and address issues but have been unable to do so. Sobriety, housing, and stability remain major concerns. Both [Parents] have struggled with heroin addition [sic] since these matters were filed. Both parents have been arrested recently multiple times for drug charges. Neither parent have [sic] engaged in services to address these issues. Due to their continued usage, neither parent is in a position to parent at this time.

Appealed Order at 3. Mother alleges that this case stems only from Parents' substance abuse issues, highlighting the juvenile court's findings regarding the underlying CHINS cases:

> 6. On September 4, 2015, [K.M. and H.M.] were adjudicated to be CHINS as to both [M]other and [F]ather when both parents admitted to an amended CHINS Petition. Specifically, Mother admitted that "[T]he children are in need of services because

[Mother] has substance abuse issues and the children and family would benefit from services offered through the Department of Child Services. The Intervention of the Court is necessary to ensure the child[ren]'s safety". . . .

* * *

8. On or about December 10, 2015, a CHINS Petition was filed on Kh.M. . . . after she was born positive for codeine, heroin, and marijuana; and that [Mother] used heroin regularly during her pregnancy.

Appealed Order at 1-2.

[14] Mother first argues that because the reason for Children's removal was based "solely on substance abuse allegations, no other issues should have been considered by the juvenile court in making its finding on this statutory requirement." Brief of Appellant at 10. Relying on language from our supreme court's decision in *In re I.A.* that "the factors identified by the trial court as conditions that will not be remedied are relevant only if those conditions were factors in DCS' decision to place [the child] in foster care in the first place[,]" 934 N.E.2d 1127, 1134 (Ind. 2016), Mother contends the juvenile court's finding number 38 is clearly erroneous for "mention[ing] other issues besides substance abuse." Br. of Appellant at 11.

[15] The juvenile court discusses Mother's sobriety, multiple arrests "for drug charges," housing, stability, and failure to engage in services for addiction treatment. Appealed Order at 3, ¶ 38. These issues—save housing—relate directly to the substance abuse issues alleged in the amended CHINS petition to

which Mother admitted and which the juvenile court found to be true. DCS alleged in its original CHINS petition that Mother "ha[d] failed to provide the children a safe and secure home free from substance abuse[,]" and that the "family is without stable housing[,]" Exhibits, Vol. III at 71, but Mother never admitted to these allegations. When considering the "factors in DCS' decision" to remove a child from a parent's care, our review of case law leads us to believe that only findings by the court regarding removal should be considered in subsequent termination proceedings. *See In re V.A.,* 51 N.E.3d at 1148 (noting where "the trial did not find that Father's 'little recognition if any of [Mother's] mental illness' was a factor in DCS' decision to remove [child] from the home[,] we do not believe it to be an appropriate basis to support the conclusion DCS has met its heightened burden to show by clear and convincing evidence that termination is appropriate"). Given the weight of the court's proper considerations, however, such a determination is ultimately unnecessary. Even assuming the consideration of Mother's housing issues was error, we conclude that it did not render the court's finding number 38 clearly erroneous.

[16] Turning to Mother's substantive argument, Mother contends that DCS did not present clear and convincing evidence that the substance abuse issues which led to the Children's removal were still present at the time of the termination hearing. Specifically, Mother challenges the juvenile court's finding that,

> Both Mother and Father consistently tested positive for drugs during the pendency of the CHINS case.

Appealed Order at 2, ¶ 23. Mother alleges the juvenile court's finding is not supported by the record. Our review of the record reveals only one positive drug screen by Mother reported on June 1, 2016.[2] We must disregard any special finding that is not proper or competent to be considered. *In re B.J.*, 879 N.E.2d 7, 19 (Ind. Ct. App. 2008), *trans. denied*. But, given the remaining evidence and the court's accurate findings, we find such error harmless. *See id.* at 20 (affirming termination of parental rights despite erroneous finding based on testimony stricken from the record because the error did not "constitute the sole support for any conclusion of law necessary to sustain the judgment"); *Matter of A.C.B.,* 598 N.E.2d 570, 573 (Ind. Ct. App. 1992) (affirming termination of parental rights despite erroneous findings because error was "not of such magnitude that it calls into question the court's conclusion").

[17] Mother next argues there is not clear and convincing evidence that she refused to participate in drug treatment.[3] Mother initially completed a substance abuse assessment which led to a recommendation for substance abuse treatment. However, Mother chose a treatment provider that was not referred by DCS and because she only completed a partial release, DCS' ability to obtain information regarding her treatment was limited. In fact, following the June 10, 2016, periodic review hearing, the juvenile court found Mother had "actively

---

[2] The record also includes evidence of Mother's failure to call in order to submit to drug screens and tests unable to be completed "due to not producing enough urine." Exhibits, Vol. III at 34-35.

[3] The juvenile court's conclusion regarding a reasonable probability that the conditions that resulted in the Children's removal will not be remedied included, "Neither parent have [sic] engaged in services to address these issues." Appealed Order at 3, ¶ 38.

prevented the DCS from obtaining information" regarding her chosen services. Exhibits, Vol. III at 25. There was also evidence that Mother failed to call in order to submit to drug screens and on other occasions was unable to produce a sufficient urine sample. So, while Mother contends she "was participating in drug treatment but in June 2016 the juvenile court ordered her to stop this treatment, forbid her from starting any new treatment and ordered her to wait for a referral from the DCS[,]" she neglects to mention her own actions prompting the juvenile court's order. Br. of Appellant at 12,

[18] After the June order, Mother contends she was "re-refer[red] to the Salvation Army" by Dapriel Benford, a Family Case Manager with DCS, and that the program first requires a detox program, "so the referral for detox came first and then a referral for substance abuse treatment was made in October 2016." Br. of Appellant at 12. In support of her argument that there was no evidence she was refusing to participate in drug treatment, Mother cites the following finding:

> 24. In July 2016, the DCS FCM made new referrals for the parents. Mother was referred for outpatient substance abuse treatment and [F]ather was referred to a detox program.

*Id.* (citing Appealed Order at 3, ¶ 24). The juvenile court's finding discusses Father's referral to a detox program, not Mother's. Mother also cites to a section of Benford's testimony which only discusses DCS recommending Father to the Salvation Army. *Id.* (citing Transcript, Volume II at 173-75). Contrary to Mother's contention, Benford testified that she provided Mother

with possible agencies for substance abuse treatment but Mother did not select an agency. Tr., Vol. II at 130-31 ("For [Father], it was detox . . . for [Mother], it was outpatient."); and 148 ("[Mother] did not select any of the services that I offered for her."). Therefore, we view Mother's argument as nothing more than a request that we reweigh the evidence and we conclude the record adequately supports the court's finding. *See, e.g., In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.*

[19] Mother also argues there was not clear and convincing evidence she was still using illegal drugs at the time of the termination hearing. Mother acknowledges that she admitted to drug use in the Summer of 2015, prior to the filing of the first CHINS petition regarding K.M. and H.M., but Mother maintains that even though Kh.M. was born in December 2015 testing positive for codeine, heroin, and marijuana, there was no evidence concerning when Mother would have had to ingest the drugs in order to cause a positive result— pointing to her negative drug tests reported on December 4. Mother also contests the juvenile court's reliance on her two arrests in January and May 2017, alleging other than the arrests and charges themselves, no evidence was presented regarding her drug use.

[20] When evaluating a parent's fitness at the time of the termination proceedings, a juvenile court must take into consideration evidence of changed conditions and balance any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). This habitual conduct

may include a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S., v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*. The court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.*

Here, we find the record adequately supports the juvenile court's conclusion that the conditions which led to the Children's removal—namely Mother's substance abuse—will not be remedied.[4] There is little evidence of changed conditions or recent improvements and Mother's habitual patterns of conduct far outweigh any such evidence. *See In re A.H.,* 832 N.E.2d 563, 570 (Ind. Ct. App. 2005) (noting where a parent's "pattern of conduct shows no overall progress, the court might reasonably find that under the circumstances, the problematic situation will not improve"). Mother's history of substance abuse combined with her inability to refrain from criminal activity, effectively participate in services, or take positive steps to improve her circumstances all demonstrate this fact. *See, e.g., In re L.S.*, 717 N.E.2d at 210 (noting a parent's unwillingness to remedy problems and to cooperate with social services, along

---

[4] Mother also argues the juvenile court erred in finding her continued custody poses a threat to the Children's well-being. Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires only one element be proven to terminate Mother's parental rights. *See In re I.A.*, 903 N.E.2d 146, 153 (Ind. Ct. App. 2009); *In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct. App. 1999), *trans. denied, cert. denied*, 543 U.S. 1161 (2002). Having concluded the evidence is sufficient to show a reasonable probability the conditions resulting in the Children's removal will not be remedied, we need not address Mother's argument.

with unchanged conditions, supports a finding there is a reasonable probability conditions will not change). Accordingly, we conclude the juvenile court's termination order was not clearly erroneous.

# Conclusion

[21] Concluding the juvenile court's decision to terminate Mother's parental rights was not clearly erroneous, we affirm.

[22] Affirmed.

Crone, J., and Bradford, J., concur.