## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2019, 8:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Sturgeon
Clark County Public Defender's Office
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika P. Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of J.T. (Child) and T.T. (Mother);

T.T. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

December 20, 2019

Court of Appeals Case No. 19A-JT-1335

Appeal from the Clark Circuit Court

The Honorable Vicki L. Carmichael

Trial Court Cause No. 10C04-1901-JT-3

**May, Judge.**

[1] T.T. ("Mother")[1] appeals the involuntary termination of her parental rights to J.T. ("Child"). Mother argues a number of the trial court's findings are not supported by the evidence. She also contends the trial court's findings do not support the trial court's conclusions that there was a reasonable probability the conditions under which Child was removed from her care would not be remedied and that the continuation of the Mother-Child relationship posed a risk to Child's safety. We affirm.

## Facts and Procedural History

[2] Child was born to Mother on April 29, 2010. On August 1, 2016, the Department of Child Services ("DCS") filed a petition alleging Child was a Child in Need of Services ("CHINS") because Mother was "getting high in the garage and [Child] was unsupervised and running around." (App. Vol. II at 108.) On August 23, 2016, DCS removed Child from Mother's care under an Emergency Order because Mother "fear[ed] that she would be homeless" and had placed Child with Child's paternal grandmother. (*Id.* at 104.) On October 20, 2016, Mother admitted Child was a CHINS, and the court adjudicated Child a CHINS.

[3] On November 3 and December 1, 2016, the trial court entered dispositional orders requiring Mother to complete certain services. The trial court ordered

---

[1] Jo.T. ("Father") is Child's father. Father was incarcerated for the entirety of these proceedings. His parental rights were also terminated, but he does not participate in this appeal.

Mother to, among other things, refrain from using drugs, complete random drug screens, maintain suitable housing and employment, complete substance abuse and individual therapy assessments and follow all recommendations, and visit with Child. Mother was initially compliant with services, and on July 6, 2017, the trial court approved a temporary home visit. Child was returned to Mother's care and lived with her for a year while both were receiving services under the CHINS order, but Child was again removed from her care on July 12, 2018, because she tested positive for illegal substances on multiple occasions during the temporary home visit.

[4] Thereafter, Mother's participation in treatment programs declined, she continued to test positive for illegal substances, and she experienced periods of homelessness. On January 17, 2019, DCS filed a petition to involuntarily terminate Mother's parental rights to Child. The trial court held evidentiary hearings on the matter on April 2, and April 9, 2019. On May 5, 2019, the trial court entered its order involuntarily terminating Mother's parental rights to Child.

# Discussion and Decision

[5] We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge the credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile

court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[6] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A juvenile court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[7] To terminate a parent-child relationship in Indiana, DCS must allege and prove:

    (A)    that one (1) of the following is true:
        (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.
        (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
        (iii)    The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-

two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)    that one (1) of the following is true:

(i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)    that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. "[I]f the State fails to prove any one of these statutory elements, then it is not entitled to a judgment terminating parental rights." *Id.* at 1261. Because parents have a constitutionally protected right to establish a home and raise their children, the State "must strictly comply with the statute terminating parental rights." *Platz v. Elkhart Cty. Dep't of Pub. Welfare*, 631 N.E.2d 16, 18 (Ind. Ct. App. 1994).

[8]    When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to

support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208. Mother contends the evidence does not support a number of the trial court's findings and that the trial court's findings do not support its conclusions that the circumstances under which Child was removed from her care would be remedied and that the continuation of the Mother-Child relationship poses a risk to Child.

## Conditions Would Not Be Remedied

[9] The juvenile court must judge a parent's fitness to care for her children at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that the conditions will not change. *Lang v. Starke Cty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. Mother challenges a number of findings related to this conclusion, which we discuss *infra*. She also contends her successful completion of the Centerstone program, her stable housing and employment at certain times during the proceedings, and her continued participation in therapy indicate she was "making progress toward stability," and thus the trial court's conclusion that the circumstances under which Child was removed from her care would not be remedied was not supported by the trial court's findings. (Br. of Appellant at 15.)

## Finding 1

Finding 1 of the trial court's order states: "[Child] is nine (9) years of age, born April 29, 2010." (App. Vol. III at 137.) Mother argues the finding is not supported by the evidence because, at the time of the termination hearing on April 9, 2019, Child was eight years old, as his birthday did not occur until after the hearing. However, as the State points out, the trial court's order was entered on May 5, 2019, after Child's ninth birthday. This is not an error – the trial court correctly listed Child's birthday and his age was correctly stated in the order.

## Finding 16

Mother also challenges Finding 16 of the trial court's order, which states, "[Mother's] lack of stable housing caused her to move into a home where she was battered. [Child] witnessed his [M]other being beaten." (App. Vol. III at 138.) Mother argues that, "[w]hile there is testimony regarding various places [Mother] has lived, there is nothing establishing a causal link that she was battered as a result." (Br. of Appellant at 10.) Additionally, she contends that, while DCS presented evidence that Child had been exposed to domestic violence, "it does not say that he saw his mother beaten." (*Id.* at 11.)

We agree with Mother. DCS presented testimony from Child's therapist, who also met with Mother, that "[Child] has had some exposure to domestic violence[,]" (Tr. Vol. II at 18), but the therapist did not indicate the victim of that domestic violence was Mother. The Director of Family Drug Treatment

Court testified that Mother was in a number of "domestically violent relationships . . . [and] all those situations were chaotic . . . [including] an incident where she was involved in a domestic situation where boyfriend's friend had abused her[,]" (*id.* at 49), but the Director did not testify that Child was present during any of those incidents when Mother experienced abuse.

[13] However, any error in this finding is harmless because, as we will note *infra*, DCS presented sufficient evidence to prove other findings that support the trial court's decision to terminate Mother's parental rights. *See Matter of A.C.B.*, 598 N.E.2d 570, 573 (Ind. Ct. App. 1992) (affirming termination of parental rights despite erroneous findings because other findings supported termination).

### *Finding 24*

[14] Finding 24 of the trial court's order states: "[Mother] persisted in illegal drug use throughout the life of the CHINS case. Despite the offer of intensive services such as Family Treatment Drug Court, Intensive Outpatient treatment, and individual counseling, [Mother] continued to test positive for THC, amphetamines, methamphetamine, and occasionally cocaine." (App. Vol. III at 139.) Mother argues the term "persisted" is "misleading" because not every drug test she took was positive and because there were extended periods of time in which she tested negative for drugs, including a portion of time during which Child lived with her during the CHINS proceedings. She also contends the trial court should not have relied on her marijuana use to determine whether to terminate her parental rights to Child because marijuana is legal is some states,

possession carries a low criminal penalty in Indiana, and DCS did not prove Mother's marijuana use affected Child's well-being.

[15] Mother's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge credibility of witnesses). Of Mother's eighty-six drug tests, only fourteen were negative for all drugs. A majority of the positive tests were positive for marijuana, and some were also positive for amphetamine, methamphetamine, and cocaine. Mother consistently maintained throughout the proceedings that she did not have a drug problem because she believed marijuana should be legal. She told her family case manager that she did not intend to stop smoking marijuana, even though the family case manager told Mother that Child would not be placed with her until she stopped doing so. Based thereon, we cannot say DCS did not present evidence to support the trial court's finding.

### *Finding 25*

[16] Finding 25 of the trial court's order states, in relevant part:

> 25. [Mother] resisted, and even rejected, services that would assist her in dealing with her substance abuse.
>
> > a. [Mother] refused to follow the treatment recommendations from the first substance abuse assessment.
> >
> > b. She refused to participate in inpatient drug treatment.

> c. She would not participate in the treatment programs available at the Healing Place.
>
> * * * * *
>
> e. She was discharged from Intensive Outpatient due to her continued drug use.
>
> f. She was terminated from Family Treatment Drug Court due to noncompliance.

(App. Vol. III at 139-40.) Mother argues the finding "ignores the broader reality that, as this Court knows, recovery is a trial and error process with many setbacks along the way, requiring patience and repeated effort before recovery is reached." (Br. of Appellant at 12.) Regarding the trial court's specific sub-findings, Mother argues: she completed an inpatient drug treatment program at Centerstone; she was not specifically required to go to the Healing Place and in fact attended there for one day; while she was discharged from Intensive Outpatient, she followed up with her therapist for additional treatment; and while she was terminated from Family Treatment Drug Court, she then entered and completed a thirty-day program at Centerstone.

[17] Mother's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh the evidence or judge the credibility of witnesses). While Mother did complete a thirty-day inpatient drug treatment at Centerstone, she did so after the other treatment failures as described in the

finding and after DCS filed a petition for the termination of her parental rights to Child. Further, while Mother completed the treatment at Centerstone, she tested positive for marijuana twice after her treatment was over. Based thereon, we cannot say DCS did not present sufficient evidence to support the finding.

### *Finding 26*

[18] Finding 26 of the trial court's order states: "[Mother] did not take advantage of the domestic violence services that were offered. Out of the 26-week program available through Associates in Counseling and Psychotherapy ("ACP"), [Mother] attended seven (7) meetings – the intake interview and six group sessions." (App. Vol. III at 140.) Mother argues that while she did not complete the ACP program, she went for seven weeks, and "it does not follow that she did not learn anything from it." (Br. of Appellant at 14.) She also notes the testimony of the Director of the Family Drug Treatment, who told the court that Mother contacted her for help getting out of an abusive situation, and that Mother "did the right thing." (Tr. Vol. II at 49.)

[19] Mother's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh the evidence or judge the credibility of witnesses). DCS presented evidence that Mother did not complete the domestic violence treatment program, as was required. We cannot say that DCS did not present sufficient evidence to support this finding.

## *Other Findings*

Further, as DCS points out, even if any of these findings were not supported by the evidence, those erroneous findings would be harmless because the unchallenged findings support the trial court's decision to terminate Mother's parental rights. *See Matter of A.C.B.*, 598 N.E.2d at 573 (affirming termination of parental rights despite erroneous findings because other findings supported termination). Such findings include:

> 19.  [Child] has remained outside the parent's home due to . . . [Mother']s drug use, her failure to secure stable housing, and her failure to maintain consistent employment.

> * * * * *

> 27.  [Mother] did not cooperate with homebased service providers who tried to assist her with housing and employment. [Mother] missed appointments.  She resisted offers for help – indicating she was able to find housing and employment on her own.  Some referrals were closed due to [Mother's] lack of participation.

> 28.  [Mother] did not fully cooperate with her DCS Family Case Manager – often being noncompliant and argumentative.

> 29.  [Child] has been traumatized.  This trauma has resulted in [sic] the domestic violence he has witnessed, along with [Mother's] chaotic lifestyle.  One witness described [Mother's] lifestyle as a "roller coaster."

> * * * * *

31. [Child's] therapist did not recommend reunification because [Mother] has not sought treatment for her own trauma.

\* \* \* \* \*

40. As of the termination hearing, [Mother] did not have stable housing, she did not have employment, [and] she continued the use of illegal drugs.

(App. Vol. III at 139-41.) As Mother does not challenge these findings, we accept them as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

[21] The trial court's findings, with the exception of Finding 16, support the trial court's conclusion that the conditions under which Child was removed from Mother's care would not be remedied. Thus, the conclusion was not erroneous. *See In re G.M.*, 71 N.E.3d 898, 908 (Ind. Ct. App. 2017) (affirming the trial court's conclusion that the conditions under which child was removed from mother's care would not be remedied based on mother's continued drug use and noncompliance with services).

## Continuation of Mother-Child Relationship Poses Risk to Child's Well-being

[22] Mother also argues the trial court's findings do not support its conclusion that the continuation of the Mother-Child relationship poses a risk to Child's well-being. Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the

disjunctive, we need decide only if the evidence and findings support the trial court's conclusion as to one of these two requirements. *See In re L.S.*, 717 N.E.2d at 209 (because statute written in disjunctive, court needs find only one requirement to terminate parental rights). Because the trial court's findings supported its conclusion that the conditions under which Child was removed from Mother's care would be not be remedied, we need not consider Mother's argument regarding whether the continuation of the Mother-Child relationship poses a risk to Child's well-being.

## Conclusion

[23] DCS presented sufficient evidence to support the findings challenged by Mother. Also, the trial court's findings support its conclusion that the conditions under which Child was removed from Mother's care would not be remedied. Accordingly, we affirm the trial court's order involuntarily terminating Mother's parental rights to Child.

[24] Affirmed.

Crone, J., and Pyle, J., concur.